**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **CURTIS GRAY**, | |
| 473 North State Street Rear<br>Marion, OH 43302 | CASE NO. 3:21-cv-00125 |
| **PLAINTIFF**, | JUDGE |
| v. | |
| **NACHURS ALPINE SOLUTIONS, LLC**, | **CLASS ACTION COMPLAINT WITH JURY DEMAND** |
| C/O Statutory Agent<br>National Registered Agents. Inc.<br>4568 Mayfield Road<br>Cleveland, OH 44121 | |
| **DEFENDANT**. | |

## I.    NATURE OF THE CLAIMS

1.    This is an employment discrimination case with a class action component for systemic violations of the Fair Credit Reporting Act (FCRA) resulting in invasions of privacy. Plaintiff Curtis Gray is an African American man.  In March of 2019, he started working for Defendant Nachurs Alpine Solutions, LLC as a Materials Handler.  This was a temporary worker position he obtained through a staffing agency named Arbet Staffing.  By September of 2019, Mr. Gray's job performance was so strong that his supervisor recommended he be hired on as a full-time employee.  This was rare for Defendant, as it generally never hired on temporary employees into full-time roles unless they had truly exceptional work performance.

2.    As part of becoming a full-time employee, Mr. Gray went through Defendant's standard application process.  He completed an employment application.  At the end of the application, Defendant snuck in an authorization to conduct a background check along with a

prospective release of liability.  Both the authorization and release were invalid because they violated, among other things, the FCRA.  Additionally, Defendant failed to include any of the mandatory disclosures required by the FCRA.  Defendant nevertheless conducted a background check on Mr. Gray.

3.     According to Alyson Issler, a Caucasian who is Defendant's Director of Human Resources, the background check supposedly showed (a) Mr. Gray had not completed high school and (b) Mr. Gray had several criminal convictions within the past ten years.  Ms. Issler claimed this information contradicted representations that Mr. Gray made on his employment application.  Ms. Issler also claimed that she had confronted Mr. Gray, and that he supposedly "lied" about the discrepancies.  Mr. Gray has a different story.  He says Ms. Issler never identified the discrepancies between the background check report and employment application. Instead, she only told him the background check report, "didn't come back like we had hoped." Mr. Gray also says that Ms. Issler would not give him a copy of the background check report. Ms. Issler, on behalf of Defendant, withdrew Mr. Gray's offer of full-time employment and refused to hire him.

4.     Several facts tend to show Ms. Issler is not being truthful.  After Ms. Issler withdrew the offer of employment, Mr. Gray went to Arbet Staffing for assistance.  The staffing agency corroborates Mr. Gray's story and contradicts Ms. Issler's story.  Arbet Staffing confirms that Mr. Gray explained how Ms. Issler gave him no explanation and did not give him a copy of the background check report.  As a result, Arbet Staffing agreed to help Mr. Gray by running its own report so he could try to discover the specific discrepancies.  The report Arbet Staffing obtained showed predominantly traffic violations, with a criminal conviction in 2002 and some predating it.  It did show one minor misdemeanor in 2016.  Further, Arbet Staffing had been

required to run a background check before assigning Mr. Gray to a temporary position with Defendant.  Arbet Staffing confirmed that nothing in the background check it conducted before Mr. Gray started working for Defendant disqualified him from employment.  Finally, Arbet Staffing asked Defendant to explain why it declined to hire Mr. Gray.  Ms. Issler claimed it was because of Mr. Gray's "work history, references, and background" and that his "work performance was poor."  Arbet Staffing was surprised by the "poor work performance" claim since Defendant had always stated Mr. Gray performed very well.  And, importantly, the reasons provided to Arbet Staffing differed materially from the reasons provided to Mr. Gray and others, indicating shifting justifications and pretext.

5.      Ms. Issler's version of events is also at odds with other facts.  In an affidavit she submitted to the Ohio Civil Rights Commission (OCRC) after Mr. Gray filed a charge of discrimination, Ms. Issler accused Mr. Gray of supposedly "lying" after she confronted him about the background check.  But if Ms. Issler really had confronted Mr. Gray, she would have learned that Mr. Gray dropped out of high school after two years to enlist in the United States Army and, after he was honorably discharged, he spent a third year obtaining his General Education Development or "GED" degree.  In other words, Ms. Issler says it was "dishonest" of Mr. Gray to honorably serve his country and claim a GED degree is equivalent to a high school degree, even though it is.  Ms. Issler also testified to the OCRC that, "Mr. Gray had several convictions with the past ten years, one as recently as 2019."  But according to the nationwide background check report Arbet Staffing ran for Mr. Gray in September 2019, which is when Ms. Issler withdrew his offer of employment, that was not true.

6.      This case involves an African American man with a prior criminal history, but who, by all accounts, was a likeable person and an exceptional worker for Defendant.  If he were

3

assessed on the merits, rather than stereotyped based upon his skin color, he should have been hired.  Further, it is a well-known problem that use of criminal background checks leads to discrimination against African Americans.  Criminal background checks reflect less on a person's character and more on whom police and prosecutors choose to target for scrutiny.  That population which is disproportionately scrutinized is African Americans.

7.      This case has also uncovered systemic FCRA violations by Defendant resulting in invasions of privacy.  The FCRA prohibits authorizations and releases from being snuck into employment applications like Defendant did with Mr. Gray because a knowing and voluntary authorization is impossible unless it is requested in a conspicuous stand-alone document—not snuck into a multi-page application with fine print.  Further, Defendant's standard application does not even come close to providing the disclosures required by the FCRA.  Defendant is a very large company that has had hundreds of people apply for employment within the statute of limitations for this class action.  And Defendant has used its standard application with everyone. Defendant conducted each background check with authorizations that are non-compliant and violated the FCRA.  And before conducting these background checks, Defendant failed to certify to its third-party vendor, ProScreen, that it was acting in compliance with the FCRA.

8.      Accordingly, Mr. Gray now files this civil action.  He seeks to recover for the harm he has suffered, to punish Defendant for its conduct, and to deter Defendant from ever perpetrating its conduct against any other person.

## II.      JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

10.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims made under state law because those claims are so related to federal law claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Pursuant to Ohio Rev. Code §§ 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over Defendant because it is a resident of, and has continuous and systematic contacts with, the State of Ohio.

12.    Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the Northern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

13.    Pursuant to Rule 3.8 of the Local Civil Rules of the United States District Court for the Northern District of Ohio, the Western Division is the appropriate division because it serves the counties in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

### III.    PARTIES

14.    Plaintiff Curtis Gray ("Plaintiff" or "Mr. Gray") is a natural person who is a resident of Marion County, Ohio.  Defendant Nachurs Alpine Solutions, LLC employed Mr. Gray as a temporary worker from March of 2019 until September of 2019, at which point the company refused to hire him as a regular full-time employee.

15.    Defendant Nachurs Alpine Solutions, LLC ("Defendant" or the "Company") is a for-profit limited liability company that formed in the State of Delaware and has its principal place of business in Marion County, Ohio.  Defendant is a specialty liquids chemical manufacturer operating in the United States and Canada.

## IV.     FACTS

### A.     Plaintiff's Employment as a Temporary Worker

16.     In March of 2019, Mr. Gray began working as a Materials Handler for Defendant at its manufacturing plant in Marion, Ohio.

17.     A staffing agency, Millard Management Group, LLC d/b/a Arbet Staffing ("Arbet Staffing"), had placed Mr. Gray with Defendant as a temporary worker.

18.     A Materials Handler is a factory worker job.  Mr. Gray processed daily inventory of raw materials and finished goods at the plant.  He also unloaded and loaded these items.

19.     Mr. Gray's direct supervisor was Chad Stallsmith.  Mr. Stallsmith consistently rated Mr. Gray's job performance as exceeding expectations.  This led Mr. Stallsmith to recommend hiring Mr. Gray for full-time employment once his temporary assignment ended.

### B.     Defendant Background Checks Plaintiff and Refuses to Hire Him Full-Time

20.     In September of 2019, as his temporary assignment was ending, Mr. Gray started the application process for full-time employment with Defendant.

21.     As part of this process, Mr. Gray was required to complete a standard online employment application that Defendant uses with all employees (the "Standard Employment Application").

22.     A true and accurate copy of a relevant portion of Mr. Gray's online employment application is attached to this Complaint as Exhibit 1.

23.     At the end of the online employment application was the following:

I hereby authorize NACHURS ALPINE SOLUTIONS to contact, obtain and verify the accuracy of the information contained in my application from all previous employers, educational institutions and references.   I authorize NACHURS ALPINE SOLUTIONS to conduct a criminal background check and obtain a credit report, as well.  I release NACHURS ALPINE SOLUTIONS, it [sic] representatives and all other persons or organizations providing such

6

information from liability for seeking, gathering and using such information to make employment decisions.

24.    At the time Defendant had Mr. Gray complete this application, it did not give him the following: a Summary of Your Rights under the Fair Credit Reporting Act, the written disclosures required for a consumer report under the FRCA, or the additional written disclosures required for an investigative consumer report under the FCRA.  Defendant has never given Mr. Gray any of these disclosures required by the FCRA.

25.    Defendant then used this authorization to have its third-party vendor, ProScreen, conduct a background check on Mr. Gray.

26.    Supposedly this background check returned information that conflicted with the statements in Mr. Gray's employment application.

27.    In response, Ms. Issler spoke with Mr. Gray.  She told him only that the Company was rescinding his offer of full-time employment.  Mr. Gray asked why the Company was rescinding his offer, but Ms. Issler refused to tell him.

28.    In response, Mr. Gray called his supervisor, Chad Stallworth, and asked him why the Company was rescinding his offer.  Mr. Stallworth also would not tell him, instead stating, "it's out of my hands and it is up to Allyson."

29.    Ms. Issler then spoke to Mr. Gray a second time.  At this point, Ms. Issler told him the background check report, "didn't come back like we had hoped."  She would not tell him any specifics.  Ms. Issler then told Mr. Gray, "you can either be finished now or work the rest of the day."  Mr. Gray chose to work the rest of the day.  After Mr. Gray completed his workday, the Company ended his employment.

30.    Ms. Issler never provided Mr. Gray any of the following: (a) a pre-adverse action notice under the FCRA; (b) a Summary of Your Rights under the Fair Credit Reporting Act; (c) a

7

copy of the background check report; (d) a post-adverse action notice under the FCRA; or (e) a disclosure of the name, address, and telephone number of the consumer reporting agency.

## C. Plaintiff Seeks Assistance From Arbet Staffing

31.     Because Ms. Issler would not tell Mr. Gray what was wrong with his background check report, nor give him a copy of the report, Mr. Gray sought assistance from Arbet Staffing, given that it had assigned him to work for Defendant.

32.     Mr. Gray told Arbet Staffing that Defendant refused to hire him based upon a background check report that it would not give to him.  So, in response, Arbet Staffing ran a nationwide background check report for Mr. Gray to help identify the alleged problem.

33.     A true and accurate copy of the nationwide background check report that Arbet Staffing ran for Mr. Gray is attached to this Complaint as Exhibit 2.

34.     As reflected in this background check report that Arbet Staffing ran, Mr. Gray had predominantly traffic violations.  The only criminal case within the last ten years was a minor misdemeanor for public intoxication in 2016, three years prior at the time, for which the penalty was a mere fifty dollar fine.  It was not even close to a felony.

35.     Arbet Staffing asked Defendant to explain why it refused to hire Mr. Gray.  Ms. Issler told Arbet Staffing that it was because of Mr. Gray's "work history, references, and background" and that his "work performance was poor."

36.     Prior to Ms. Issler's refusal to hire Mr. Gray, Defendant had always told Arbet Staffing that Mr. Gray's work performance was strong.  Indeed, that was precisely why Mr. Gray's supervisor, Mr. Stallsmith, had recommended him for full-time employment.

37.     Further, Ms. Issler never told Mr. Gray that his "work history" or "references" were a problem.

38.     Instead, Ms. Issler discriminated against Mr. Gray by stereotyping him as a dangerous criminal because of his skin color.

**D.      Plaintiff's Charge of Discrimination**

39.     On February 12, 2020, Mr. Gray dual-filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") (the "Charge").  The Charge alleged race discrimination relying on the facts described in this Complaint.

40.     The OCRC subsequently investigated the charge of discrimination and requested a position statement from Defendant.

41.     Defendant responded with a position statement that contained conflicting and contradictory statements.  This included without limitation the following:

        a.      Defendant claimed Ms. Issler supposedly identified the alleged discrepancies between Mr. Gray's background check report and his employment application, but that did not happen according to Mr. Gray as corroborated by Arbet Staffing.

        b.      Defendant claimed Mr. Gray supposedly "lied" after being confronted by Ms. Issler on the alleged discrepancies between Mr. Gray's background check report and his employment application, but since she never identified the discrepancies to Mr. Gray he could not have "lied" in some purported explanation about them.  Further, if Ms. Issler had really confronted Mr. Gray about the alleged discrepancy on his high school education, then she would have learned there was no discrepancy at all since Mr. Gray completed his GED after honorably serving his country in the United States Army.

c.      Defendant claimed Mr. Gray, "had several convictions in the past ten years."  This is not true according to the nationwide background check that Arbet Staffing ran.

d.      Defendant claimed Mr. Gray had not completed high school, in contradiction to representations on his employment application.  Mr. Gray obtained his GED after honorably serving his country in the United States Army.

e.      Defendant claimed it refused to hire Mr. Gray because of these alleged discrepancies between the background check report and his employment application, but Ms. Issler told Arbet Staffing that it was supposedly also due to Mr. Gray's "work history," "references," and because "his work performance was poor."  Defendant's position statement thus contradicts Ms. Issler's stated explanations to Arbet Staffing.

42.     On October 20, 2020, the EEOC issued a "Dismissal and Notice of Rights" letter to Mr. Gray for his charge of discrimination (the "Right to Sue Letter").

43.     A true and accurate copy of the Right to Sue Letter is attached to this Complaint as Exhibit 3.

**E.  Defendant Continues to Use the Standard Employment Application**

44.     Even though its Standard Employment Application violates the FCRA, Defendant continues to use it to this day.

45.     A true and accurate copy of a screenshot of Defendant's Standard Employment Application, taken January 15, 2021, is attached to this Complaint as Exhibit 4.

46.     As Exhibit 4 reflects, Defendant's online application today still includes the authorization and release that violate the FCRA.  Exhibit 4 is a screenshot of an online application to be a Material Handler for Defendant, the same position Mr. Gray held.  The online

application for all other job positions for Defendant includes this same illegal authorization and release for background checks.

## V.    CLASS ACTION ALLEGATIONS

47.    Mr. Gray brings this action under the FCRA and for invasion of privacy on behalf of himself and as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure seeking equitable relief and damages on behalf of the following classes:

a.    All persons within the United States for whom the following are true: (a) who, within the last five years, completed the Standard Employment Application for Defendant; (b) who, within the last two years, discovered that the Standard Employment Application violated the FCRA; and (c) regarding whom Defendant procured a consumer report and/or investigative consumer report using the Standard Employment Application (the "Application Class").

b.    All persons within the United States for whom the following are true: (a) who, within the last five years, completed the Standard Employment Application for Defendant; (b) who, within the last two years, discovered that the Standard Employment Application violated the FCRA; and (c) regarding whom Defendant procured a consumer report and/or investigative consumer report using the Standard Employment Application; and (d) who suffered an adverse action by Defendant, in whole or in part, based upon the contents of a consumer report and/or investigative consumer report Defendant procured using the Standard Employment Application (the "Adverse Action Class").

48.    While Mr. Gray does not know the exact number of the people within the Application Class and the Adverse Action Class, there are likely to be many hundreds. Defendant is a manufacturer with plants in Indiana, Iowa, Louisiana, Ohio, and South Dakota.

These plants collectively employ hundreds of people and have relatively high turnover. Additionally, Defendant uses seasonal temporary workers to supplement their workforce as needed.  Given this volume of applicants who all complete the Standard Employment Application, the classes are so numerous that joinder of all members is impracticable.

49.    Common questions of law and fact exist as to all members of the Application Class and the Adverse Action Class.  The FCRA and invasion of privacy claims on which Mr. Gray will seek class certification hinge on Defendant's Standard Employment Application and background check process that violated the FCRA in the same way for all members of the Application Class and the Adverse Action Class.  As a result, common questions of law and fact include without limitation the following:

    a.    Whether Defendant violated 15 U.S.C. § 1681b(b)(1)(A) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that its Standard Employment Application would comply with the requirements contained in 15 U.S.C. §§ 1681b(b)(2)-(3).

    b.    Whether Defendant violated 15 U.S.C. § 1681b(b)(2) when its Standard Employment Application failed to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a report may be obtained for employment purposes."

    c.    Whether Defendant violated 15 U.S.C. § 1681b(b)(3) when it failed to provide a pre-adverse action notice, a copy of the consumer report, and a summary of the consumer's rights under the FCRA to the applicants before taking adverse action.

d.      Whether Defendant violated 15 U.S.C. § 1681d(a)(1) when its Standard Employment Application failed, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made."

e.      Whether Defendant violated 15 U.S.C. § 1681d(a)(2) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that its Standard Employment Application would comply with the requirements contained in 15 U.S.C. §§ 1681d(a)(1).

f.      Whether Defendant violated 15 U.S.C. §§ 1681m(a)(1), (3), and (4) when it failed to provide a post-adverse action notice; a disclosure of the name, address, and telephone number of the consumer reporting agency including toll-free number that furnished the report; and failed to provide notice of the consumer's right to obtain a free copy of the consumer report and to dispute the accuracy of the report with the consumer reporting agency.

g.      Whether Defendant's violations were willful or negligent.

h.      The appropriate class-wide injunctive relief prohibiting Defendant from continuing to violate the FCRA with its Standard Employment Application and background check process.

i.      For a willful violation, the appropriate class-wide statutory damages per member of the class under 15 U.S.C. § 1681n(a)(1)(A).

j.      For a willful violation, the appropriate class-wide punitive damages per member of the class under 15 U.S.C. § 1681n(a)(2).

k.      Whether Defendant's FCRA's violations invaded the privacy of Plaintiff, the members of the Application Class, and the members of the Adverse Action Class.

l.      Whether Defendant's violations of the FCRA were highly offensive to the reasonable person.

m.      The appropriate class-wide damages, including class-wide punitive damages, for Defendant's FCRA violations resulting in the invasions of privacy against Plaintiff, the members of the Application Class, and the members of the Adverse Action Class.

50.      Mr. Gray's claims under the FCRA and for invasion of privacy are typical of the claims belonging to both the Application Class and the Adverse Action Class.  Mr. Gray and the class members were all similarly affected by Defendant violating the FCRA in that they were all subject to Defendant's Standard Employment Application and background check process.

51.      Mr. Gray's interests are coincident with, and not antagonistic to, those of the other members of the Application Class and Adverse Action Class.  Mr. Gray is represented by counsel who are competent and experienced in the prosecution of employment litigation and class action litigation.

52.      For the FCRA and invasion of privacy claims, the questions of law and fact common to the members of the Application Class and the Adverse Action Class predominate over any questions affecting only individual members.

53.      Class action treatment is a superior method for the fair and efficient adjudication of the controversy because such treatment will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that individual actions would cause.

14

Further, the benefits of proceeding through the class mechanism, including providing injured persons with redress for claims that are not practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

54.    The prosecution of separate actions by individual members of the Application Class and the Adverse Action Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

## VI.    CLAIMS FOR RELIEF

### COUNT I

**Violations of the Fair Credit Reporting Act of 1970, 15 U.S.C. §§ 1681, et seq.**
**(Willful Noncompliance)**

**By Plaintiff, on Behalf of Himself and the Classes, Against Defendant**

55.    All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

56.    Plaintiff, the members of the Application Class, and the members of the Adverse Action Class were at all relevant times "consumers" within the meaning of 15 U.S.C. § 1681a(c).

57.    Defendant was at all relevant times a "person" within the meaning of 15 U.S.C. § 1681a(b).

58.    Defendant violated 15 U.S.C. § 1681n when it willfully failed to comply with the FCRA as follows:

a.    Defendant violated 15 U.S.C. § 1681b(b)(1)(A) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that it would comply with the requirements contained in 15 U.S.C. §§ 1681b(b)(2)-(3).

b.    Defendant violated 15 U.S.C. § 1681b(b)(2) when it failed to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is

procured or caused to be procured, in a document that consists solely of the disclosure, that a report may be obtained for employment purposes."

     c.     Defendant violated 15 U.S.C. § 1681b(b)(3) when it failed to provide a pre-adverse action notice, a copy of the consumer report, and a summary of the consumer's rights under the FCRA to the consumer before taking adverse action.

     d.     Defendant violated 15 U.S.C. § 1681d(a)(1) when it failed, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made."

     e.     Defendant violated 15 U.S.C. § 1681d(a)(2) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that it would comply with the requirements contained in 15 U.S.C. §§ 1681d(a)(1).

     f.     Defendant violated 15 U.S.C. §§ 1681m(a)(1), (3), and (4) when it failed to provide a post-adverse action notice; a disclosure of the name, address, and telephone number of the consumer reporting agency including toll-free number; and failed to provide notice of the consumer's right to obtain a free copy of the consumer report and to dispute the accuracy of the report with the consumer reporting agency.

59.     As a proximate result of Defendant's actions, Plaintiff, the members of the Application Class, and the members of the Adverse Action Class have been and continue to be damaged in an amount to be determined at trial.

60.     Consistent with 15 U.S.C. § 1681n(a)(2), Plaintiff, the members of the Application Class, and the members of the Adverse Action Class are entitled to punitive damages.

61.     Consistent with 15 U.S.C. § 1681n(a)(3), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count I.

## COUNT II

**Violations of the Fair Credit Reporting Act of 1970, 15 U.S.C. §§ 1681, et seq.**
**(Negligent Noncompliance)**

**By Plaintiff, on Behalf of Himself and the Classes, Against Defendant**

62.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

63.     Plaintiff, the members of the Application Class, and the members of the Adverse Action Class were at all relevant times "consumers" within the meaning of 15 U.S.C. § 1681a(c).

64.     Defendant was at all relevant times a "person" within the meaning of 15 U.S.C. § 1681a(b).

65.     Defendant violated 15 U.S.C. § 1681o when it negligently failed to comply with the FCRA as follows:

        a.      Defendant violated 15 U.S.C. § 1681b(b)(1)(A) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that it would comply with the requirements contained in 15 U.S.C. §§ 1681b(b)(2)-(3).

        b.      Defendant violated 15 U.S.C. § 1681b(b)(2) when it failed to make a "clear and conspicuous disclosure . . . in writing to the consumer . . . before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a report may be obtained for employment purposes."

        c.      Defendant violated 15 U.S.C. § 1681b(b)(3) when it failed to provide a pre-adverse action notice, a copy of the consumer report, and a summary of the consumer's rights under the FCRA to the consumer before taking adverse action.

17

d.      Defendant violated 15 U.S.C. § 1681d(a)(1) when it failed, in writing, to "clearly and accurately disclose[] to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, mode of living, whichever are applicable, may be made."

e.      Defendant violated 15 U.S.C. § 1681d(a)(2) when it failed to certify or falsely certified to its third-party vendor, ProScreen, that it would comply with the requirements contained in 15 U.S.C. §§ 1681d(a)(1).

f.      Defendant violated 15 U.S.C. §§ 1681m(a)(1), (3), and (4) when it failed to provide a post-adverse action notice; a disclosure of the name, address, and telephone number of the consumer reporting agency including toll-free number that furnished the report; and failed to provide notice of the consumer's right to obtain a free copy of the consumer report and to dispute the accuracy of the report with the consumer reporting agency.

66.     As a proximate result of Defendant's actions, Plaintiff, the members of the Application Class, and the members of the Adverse Action Class have been and continue to be damaged in an amount to be determined at trial.

67.     Consistent with 15 U.S.C. § 1681o(a)(2), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count II.

**COUNT III**

**Common Law Invasion of Privacy**
**(Intrusion Upon Seclusion)**

**By Plaintiff, on Behalf of Himself and the Classes, Against Defendant**

68.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

69.     Defendant wrongfully intruded upon the private affairs or concerns of Plaintiff, the members of the Application Class, and the members of the Adverse Action Class.

70.     Defendant's wrongful intrusion was conducted in such as manner as to be highly offensive to the reasonable person.

71.     As a proximate result of Defendant's actions, Plaintiff, the members of the Application Class, and the members of the Adverse Action Class have been and continue to be damaged in an amount to be determined at trial.

72.     Consistent with R.C. 2315.21, Plaintiff, the members of the Application Class, and the members of the Adverse Action Class are entitled to punitive damages because the actions or omissions of Defendant demonstrate malice or aggravated or egregious fraud, and/or Defendant as principal or master knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

73.     Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count III.

**COUNT IV**

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.**
**(Race Discrimination – Termination of Employment/Failure to Hire)**

**By Plaintiff Against Defendant**

74.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

75.     Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 2000e(f).

76.     Defendant was at all relevant times an "employer" within the meaning of 42 U.S.C. § 2000e(b).

77.     Defendant violated 42 U.S.C. § 2000e-2(a) when it terminated Plaintiff's employment because of his race and/or failed to hire Plaintiff because of his race.  Alternatively, Plaintiff's race was a motivating factor in the decision by Defendant to terminate Plaintiff's employment and/or failed to hire Plaintiff.

78.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

79.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

80.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count IV.

## COUNT V

**Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**(Race Discrimination – Termination of Employment/Failure to Hire)**

**By Plaintiff Against Defendant**

81.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

82.     Plaintiff was at all relevant times a "person" within the meaning of 42 U.S.C. § 1981.

83.     Defendant violated 42 U.S.C. § 1981 when it terminated Plaintiff's employment because of his race and/or failed to hire Plaintiff because of his race.  Alternatively, Plaintiff's

race was a motivating factor in the decision by Defendant to terminate Plaintiff's employment and/or failed to hire Plaintiff.

84.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

85.     Consistent with 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

86.     Consistent with 42 U.S.C. § 2000e-5(k), Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count V.

## COUNT VI

### Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99
### (Race Discrimination – Termination of Employment/Failure to Hire)

### By Plaintiff Against Defendant

87.     All preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

88.     Plaintiff was at all relevant times an "employee" within the meaning of R.C. 4112.01(A)(3).

89.     Defendant was at all relevant times an "employer" within the meaning of R.C. 4112.01(A)(2).

90.     Defendant violated R.C. 4112.02 and/or 4112.99 when it terminated Plaintiff's employment because of his race and/or failed to hire Plaintiff because of his race. Alternatively, Plaintiff's race was a motivating factor in the decision by Defendant to terminate Plaintiff's employment and/or failed to hire Plaintiff.

91.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

92.     Consistent with R.C. 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendant demonstrate malice or aggravated or egregious fraud, and/or Defendant as principal or master knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

93.     Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count VI.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in his favor on all claims in this Complaint and requests the following relief:

A.     Economic compensatory damages in an amount to be determined at trial;

B.     Non-economic compensatory damages in an amount to be determined at trial;

C.     Liquidated, treble, punitive, statutory, or other exemplary damages in an amount to be determined at trial;

D.     Reinstatement or, in the alternative, front pay in an amount to be determined;

E.     Reasonable attorneys' fees incurred in pursuing the claims against Defendant;

F.     All costs and expenses incurred in pursuing the claims against Defendant;

G.     Pre- and post-judgment interest; and

H.     All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VIII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all

claims and issues that are triable.

Respectfully submitted,

By:  /s/ Jason E. Starling
Jason E. Starling (Ohio Bar No. 0082619), Trial Attorney
Kevin R. Kelleher (Ohio Bar No. 0099167)
WILLIS SPANGLER STARLING
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026
Telephone: (614) 586-7915
Facsimile: (614) 586-7901
jstarling@willisattorneys.com
kkelleher@willisattorneys.com

John C. Camillus (Ohio Bar No. 0077435)
LAW OFFICES OF JOHN C. CAMILLUS, LLC
P.O. Box 141410
Columbus, Ohio 43214
Telephone: (614) 558-7254
Facsimile: (614) 559-6731
jcamillus@camilluslaw.com

*Attorneys for Plaintiff Curtis Gray*