UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Curtis J. Gray,                                          Case No. 3:21-cv-125

                Plaintiff,

      v.                                                      MEMORANDUM OPINION
                                                                           AND ORDER

Nachurs Alpine Solutions, LLC,

                Defendant.

## I.     INTRODUCTION

Plaintiff Curtis Gray filed a complaint against Defendant Nachurs Alpine Solutions, LLC ("NAS") alleging: violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* ("FCRA"); invasion of privacy; and race discrimination under both federal and state law. (Doc. No. 1). Gray also asserts class action allegations with respect to the FCRA violations. (*Id.*).

NAS filed a partial motion to dismiss under Rule 12(b)(6) in April 2021. (Doc. No. 8).[1] Instead of responding, Gray filed his first amended complaint on May 3, 2021. (Doc. No. 9). NAS again filed a partial motion to dismiss. (Doc. No. 11). After briefing, I granted NAS's motion to dismiss Gray's claims for relief under 15 U.S.C. § 1681d and § 1681m, and common law invasion of privacy; but denied NAS's motion to dismiss Gray's claim for relief under 42 U.S.C. § 1981. (Doc. No. 15).

After my ruling, Gray filed a motion for leave to amend the complaint a second time. (Doc. No. 20). In response, NAS filed a notice of non-opposition to Gray's motion for leave to amend.

---

[1] I denied this motion as moot following Gray's first amended complaint. (*See* Doc. No. 15).

(Doc. No. 21). I then granted the unopposed motion. (Non-Doc. Order June 21, 2022). The second amended complaint was filed on June 23, 2022. (Doc. No. 22). NAS answered the second amended complaint, (Doc. No. 24), but a week later also filed a partial motion to dismiss and a partial motion for judgment on the pleadings. (Doc. No. 25). Gray opposed the motion, (Doc. No. 28), and NAS filed a reply brief. (Doc. No. 31). For the reasons below, I grant NAS's partial motion to dismiss and deny its partial motion for judgment on the pleadings as moot.

## II. BACKGROUND

Gray, an African American male, began working at NAS in March 2019 as a temporary, seasonal employee placed through Arbet Staffing. (Doc. No. 22 at 1). By September, Gray's supervisor recommended he apply for full-time employment due to his strong work performance. (*Id.*). As part of the process, Gray was required to complete a standard online employment application. (*Id.*).

The application included a question about criminal history; in response to whether he had "been convicted of a crime in the last 10 years," Gray answered "No." (Doc. No. 25-2 at 6). The application included the following language: "I understand that any misrepresentation or material omission made by me on this application will be sufficient cause for cancellation of this application or immediate termination of employment if I am employed, whenever it may be discovered." (Doc. No. 22-1 at 2). At the conclusion of the application, there was the following relevant disclosure:

> I hereby authorize Nachurs Alpine Solutions to contact, obtain and verify the accuracy of the information contained in my application from all previous employers, educational institutions and references. I authorize Nachurs Alpine Solutions to conduct a criminal background check and obtain a credit report, as well. I release Nachurs Alpine Solutions, its representatives and all other persons or organizations providing such information from liability for seeking, gathering and using such information to make employment decisions.

(Doc. No. 22-1).

Gray also signed an authorization from ProScreening, a third-party vendor utilized by NAS to conduct background checks. The relevant contents of the disclosure are as follows:

> I acknowledge receipt of the separate documents entitled DISCLOSURE REGARDING BACKGROUND INVESTIGATION, A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT and the DISCLOSURE FOR INVESTIGATIVE CONSUMER REPORT and certify that I have read and understand those documents. I hereby authorize the obtaining of "consumer reports" and/or "investigative consumer reports" by the Employer at any time after receipt of this authorization and throughout my employment, if applicable.

(Doc. No. 22-2). Gray alleged he never received the documents cited in the authorization. (Doc. No. 22 at 7-8).

Subsequently, ProScreening conducted a background check on Gray. (*Id.* at 8). This background check returned information inconsistent with Gray's representations on his application.[2] For example, the background check identified a January 2018 misdemeanor conviction in Marion, Ohio Municipal Court for operating a vehicle under the influence (Case No. TRC1711591A). (Doc. No. 22-5 at 3).

NAS did not offer Gray a position. (Doc. No. 22 at 8). Upon inquiry, NAS's HR Director, Alyson Issler, informed Gray there were issues with his background check but would not tell him any specifics. (*Id.* at 8-9).

Gray reached out to Arbet for help and Arbet ran a nationwide background check to help Gray identify the issue. (*Id.* at 9; Doc. No. 22-3). Relevantly, the Arbet background report noted a

---

[2] NAS asserts a reason for rescinding the employment offer was that Gray misrepresented his education. (*See* Doc. No. 25-1 at 6, 9). But the basis for this claim is not clear. Gray's application noted that he attended Elyria High School for three years but it does not state he graduated from this institution. (Doc. No. 25-2 at 4-5). The background check confirmed Gray was enrolled at Elyria High School but did not graduate. (Doc. No. 22-5 at 3). Gray later achieved his GED following his honorable discharge from the U.S. Army. (Doc. No. 22 at 3). To the extent this may be viewed as a misrepresentation, it is not material to my analysis.

3

misdemeanor public intoxication conviction and the misdemeanor conviction for operating a vehicle under the influence (Case No. TRC1711591A).[3] (Doc. No. 22-3 at 6; *see also* Doc. No. 22 at 9).

Arbet asked NAS to explain why it did not hire Gray, and Issler responded it was due to Gray's "work history, references, and background" and that his "work performance was poor." (Doc. No. 22 at 10). Arbet had received no complaints from NAS regarding Gray's work performance; instead, Gray's performance was reported as strong. (*Id.*).

In February 2020, Gray filed an OCRC/EEOC charge alleging race discrimination. (*Id.*). Gray alleges NAS's position statement contained multiple inconsistencies regarding Gray's discussions with Issler and the contents of the NAS background report. (*See id.* at 10-11).

### III.    STANDARD

NAS brings its partial motion to dismiss under Rule 12(b)(1) challenging this court's subject matter jurisdiction for lack of Article III standing. A challenge to a court's subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *U.S. v. Ritchie*, 15 F.3d 532, 598 (6th Cir. 1994). NAS asserts a facial attack which challenges the sufficiency of the complaint's allegations to invoke federal jurisdiction. *Id.* "On such a motion, the court must take the material allegations of the [pleading] as true and construed in the light most favorable to the nonmoving party." *Id.* The burden of proving the existence of subject matter jurisdiction lies with the party invoking federal jurisdiction, in this case, the plaintiff. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

Article III standing is essential to invoking federal jurisdiction. U.S. Const. Art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing must be demonstrated "for each

---

[3] While Gray's age is not apparent from the pleadings, based off his years of attendance at Elyria High School (1978-1980), both of these convictions occurred when Gray was an adult; so there is no issue as to whether his consent to a record check for criminal convictions would include juvenile adjudications of delinquency.

4

claim [plaintiff] seeks to press and for each form of relief sought." *Lujan,* 504 U.S. at 561. To establish standing, the plaintiff must show: (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and that (3) will likely be redressed by a decision in plaintiff's favor. *Id.*

NAS's motion focuses on the first element – injury in fact, which "requires the plaintiff to allege an injury that is both concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation and internal quotation marks omitted). Particularized means it "must affect the plaintiff in a personal and individual way." *Spokeo,* 578 U.S. at 339 (citation omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340. An "abstract injury" does not satisfy the injury in fact requirement. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury in fact requirement of Article III." *Id.* (citation omitted). The Supreme Court recently clarified "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2210-11 (2021). "Rather, plaintiffs must demonstrate that the 'risk of future harm materialized,' or that the plaintiffs 'were independently harmed by their exposure to the risk itself.'" *Ward v. Nat'l Patient Account Servs. Solutions., Inc.*, 9 F. 4th 357, 361 (6th Cir. 2021) (quoting *TransUnion*, 141 S.Ct. at 2211).

## IV. ANALYSIS

NAS's partial motion to dismiss challenges Gray's standing to assert each of the FCRA claims, arguing Gray has not adequately alleged a cognizable injury in fact resulting from the procedural violations.

### A. Standing for 15 U.S.C. § 1681b(b)(3) claim

Section 1681b(b)(3) states that "before taking any adverse action, based in whole or in part on the [consumer] report," the company must provide the consumer with (1) a copy of the consumer report; and (2) the FCRA Summary of Rights. 15 U.S.C. § 1681b(b)(3)(A).[4]

In support of standing, Gray argues the Congressional purpose in enacting § 1681b(b)(3) was to provide consumers an opportunity to address the contents of the consumer report prior to the adverse action; and since the exact harm the statute was meant to prevent occurred, the statutory violation alone is sufficient to establish standing. (Doc. No. 28 at 7-11) (citing *Long v. Se. Penn. Transp. Auth.*, 903 F.3d 312 (3d Cir. 2018) (finding standing for § 1681b(b)(3) claim because "taking an adverse employment action without providing the required consumer report is the very harm that Congress sought to prevent") (internal quotations omitted), and *Robertson v. Allied Solutions, LLC*, 902 F.3d 690 (7th Cir. 2018) (finding standing for § 1681b(b)(3) informational injury where plaintiff was prevented from providing context to the contents of her consumer report before adverse action taken)).

The caselaw upon which Gray relies to support his position was decided prior to the Supreme Court's decision in *TransUnion v. Ramirez* and applies an injury in fact standard that *TransUnion* rejected. 141 S.Ct. at 2210-11. Prior to *TransUnion*, a plaintiff could establish standing by showing a statutory violation that resulted in the harm that Congress sought to prevent by enacting the law. *See Macy v. GC Servs., L.P.,* 897 F. 3d 747, 755-56 (6th Cir. 2018) ("[T]he violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact

---

[4] A consumer report is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C. § 1681a(d)(1).

6

because Congress conferred the procedural right to protect plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest.").

But in *TransUnion*, the Supreme Court explained that while "Congress may elevate harms that exist in the real world . . . , it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion*, 141 S. Ct. at 2205 (internal quotations and citations omitted). It went on to clarify the difference between the "statutory cause of action" afforded to plaintiffs from Congressional action, and the separate Article III inquiry of whether the plaintiff "suffer[ed] concrete harm because of the defendant's violation of federal law." *Id.* To determine if a statutory violation presents a concrete harm, the court analyzes whether "the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms including [ ] reputational harm." *Id.* at 2200.

Following the *TransUnion* decision, the Sixth Circuit acknowledged that its prior standard established in *Macy*, *i.e.*, procedural violations which create a material risk of harm to Congressionally-recognized interests, was no longer sufficient to establish standing. *Ward*, 9 F.4th at 361. It then explicitly abrogated *Macy*, finding that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* (quoting *TransUnion*, 141 S.Ct. at 2210-11). Instead, a plaintiff "must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Id.*

Gray does not argue that NAS's violation of § 1681b(b)(3) is akin to a traditionally recognized harm. Rather, Gray asserts the failure to provide the disclosures prevented him from exercising his Congressionally-created right to explain the inconsistencies between his representations on his employment application and the contents of the consumer report. (*See* Doc.

7

No. 28 at 7-8, 10). NAS argues this is insufficient to establish standing after *Ward*. (Doc. No. 25-1 at 8-10).

The Eighth Circuit's opinion in *Schumacher v. SC Data Ctr, Inc.* is instructive. 33 F.4th 504 (8th Cir. 2022). Like Gray, Schumacher applied for a position, responded "no" to a question regarding past criminal convictions, attested that her answers were accurate, and authorized SC Data to run a background check. *Schumacher*, 33 F.4th at 507. After the background report revealed prior felony convictions, SC Data withdrew its offer of employment but did not give Schumacher the required pre-adverse action disclosures provided for by § 1681b(b)(3). *Id.* at 508-09. Schumacher claimed this procedural violation caused an injury in fact because she was not able to "contextualize and explain negative information in her report." *Id.* at 508.

The Eighth Circuit concluded the FCRA did not mandate "an employer provide a prospective or current employee an opportunity to dispute or explain the contents of the report directly with the employer." *Id.* at 511 (citing *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020)). Even if it did though, the FCRA was intended to protect against the "dissemination of inaccurate information." *Id.* at 512. But Schumacher made no claim that the report contained inaccurate information. *Id.* As such, the § 1681b(b)(3) violation did not create an injury in fact because even if she had received the required disclosure (and had the ability to explain), it would not have shown that SC Data relied upon inaccurate information to deny her employment. *Id.* Thus, regardless of the procedural violation, SC Data still would not have hired her. *Id.* ("Schumacher may have demonstrated an injury in law but not an injury in fact.").

Similarly here, the § 1681b(b)(3) violation is divorced from concrete injury because Gray has not alleged the report contained inaccurate information or that NAS's decision would have been different if he had received the required disclosure. Gray represented on his application that he did not have any criminal convictions in the past 10 years, but both the Arbet and ProScreening reports

8

show this to be untrue. (*See* Doc. No. 22-5 at 3; Doc. No. 22-3 at 6; Doc. No. 22 at 9). Even if Gray had received the disclosure prior to NAS withdrawing its offer, it would not negate the fact that the background check showed accurate information which rendered Gray ineligible for the position. Thus, the concrete injury did not arise from NAS's failure to provide the disclosures – it resulted from Gray's misrepresentation or omission on his application.

Since Gray cannot establish standing solely with allegations of harm to a Congressionally-recognized interest, *Ward*, 9 F.4th at 361, and has not otherwise alleged how the procedural violation caused him concrete injury, I conclude he lacks standing to bring this claim. *TransUnion*, 141 S. Ct. at 2205 (Article III standing is demonstrated when plaintiff "suffer[s] concrete harm because of the defendant's violation of federal law."); *see also Davis v. Universal Prot. Servs., LLC*, 558 F. Supp.3d 220 (E.D. Penn. 2021) (concluding plaintiff lacked standing for § 1681b(b)(3) violation where she failed to allege the report was inaccurate or that the outcome would have been different had she received the disclosures). As Gray has failed to carry his burden, I dismiss Counts 1 and 2 to the extent they seek relief under § 1681b(b)(3) for lack of subject-matter jurisdiction.

### B. Standing for 15 U.S.C. § 1681b(b)(2) and § 1681d claims

Prior to obtaining a consumer report for employment purposes, § 1681b(b)(2) requires (1) a clear and conspicuous disclosure, in writing and in a stand-alone document, that a consumer report may be obtained for employment purposes; and (2) plaintiff's written authorization to obtain the report. 15 U.S.C. § 1681b(b)(2)(A). Section 1681d addresses disclosure requirements when an employer requests an investigative consumer report.[5] *Id.* § 1681d. In these instances, the employer must clearly disclose, in writing, that an investigative consumer report may be obtained and that the

---

[5] An investigative consumer report is a type of consumer report "in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer . . . or who may have knowledge concerning any such items of information." 15 U.S.C. § 1681a(e).

consumer has the right to request further information about the investigative consumer report and their rights under the FCRA. *Id.* § 1681d(a)(1). The employer must also certify to the consumer reporting agency that it has made these disclosures to the consumer. *Id.* § 1681d(a)(2).

The statutory violations alleged by Gray relate to defective or incomplete disclosures. (Doc. No. 22 at 7-8). With regard to the NAS disclosure, Gray alleges it was not presented in a stand-alone document. (*Id.* at 14). As to the ProScreening disclosure, Gray alleges it failed to state the consumer report would be used for "employment purposes." (*Id.*). Gray also alleges neither disclosure informed him that an "investigative consumer report including information as to his character, general reputation, personal characteristics, [or] mode of living" may be obtained. (*Id.*). Gray further alleges he did not receive the documents referenced in the ProScreening disclosure. (*Id.* at 8).

NAS challenges Gray's standing to bring claims under these sections because Gray alleged nothing more than "bare procedural violations." *Spokeo*, 578 U.S. at 341. In opposition, Gray identifies three alleged harms that resulted from NAS' procedural violations: invasion of privacy, adverse action, and emotional distress. (Doc. No. 28 at 11-21).

1. **Invasion of Privacy**

Gray asserts § 1681b(b)(2) and § 1681d violations resemble the "traditionally recognized" tort of invasion of privacy. *TransUnion*, 141 S.Ct. at 2204. Invasion of privacy is a historically recognized tort which may be sufficient to establish concrete injury, *id.*, and many courts have found that a Congressional purpose in enacting the FCRA was to protect consumer privacy. *See, e.g.*, *Ferguson v. DIRECTV, LLC*, No. 1:15-cv-2636, 2017 WL 733900, at *4 (N.D. Ohio Feb. 22, 2017) (acknowledging a purpose of the FCRA is "to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information."); *Schumacher*, 33 F.4th at 509

("The FCRA has two goals: to promote fair and accurate credit reporting and to protect consumer privacy.") (internal quotations omitted).

But an invasion of privacy does not exist if the party consented to the invasion. *Lundsford v. Sterile of Ohio, LLC*, 165 N.E.3d 245, 254 (Ohio 2020) ("Consent is generally an absolute defense to an invasion of privacy claim.") (citing Restatement (Third) of Employment § 7.06 (2015)). NAS argues Gray consented to the procurement of these reports and his consent nullifies any claim of concrete injury resulting from the invasion of privacy. (Doc. No. 31 at 13-14). Gray argues the non-compliant disclosures automatically rendered his consent invalid. (Doc. No. 28 at 17-18) (citing *Theriot v. Mundy Cos.*, No. 4:15-vc-2481, 2017 U.S. Dist. LEXIS 8009 (S.D. Tex. Jan. 20, 2017) and *Mix v. Asurion Ins. Servs.*, No. CV-14-2357, 2016 U.S. Dist. LEXIS 172874 (D. Ariz. Dec. 14, 2016)).[6]

The cases upon which Gray relies are distinguishable. First, *Theriot* does not analyze constitutional standing; it concluded on summary judgment, as a matter of law, that the employer violated the plain language of § 1681b(b)(2) by including additional language in the disclosures. *Theriot*, 2017 U.S. Dist. LEXIS 8009 at *13. But "an injury in law is not an injury in fact" for purposes of standing. *TransUnion*, 141 S.Ct. at 2205.

Second, while *Mix* does analyze standing, it relies on the pre-*TransUnion* standard to conclude "[v]iolations of [the] FCRA that unfairly deprive a consumer of relevant information, or obtain consent for a background check without a statutorily proper disclosure, implicate the harms Congress identified in [the] FCRA, and thus cause concrete harms." *Mix*, 2016 U.S. Dist. LEXIS 172874, at *19. But the Sixth Circuit, following *TransUnion*, held a plaintiff can no longer establish standing solely by showing "a material risk of harm to the interests recognized by Congress[.]"

---

[6] "A decision of a federal district court judge is not binding precedent in . . . a different judicial district[.]" *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

11

*Ward*, 9 F.4th at 361. The risk identified as sufficient in *Mix* would not establish standing in the Sixth Circuit unless the plaintiff could demonstrate "the risk of future harm materialized[.]" *Id.* Put another way, the risk of invalid consent materializes where the defective disclosures cause the plaintiff to be confused as to that to which he is consenting.

The Seventh Circuit recognized that consent was central to the purpose of the FCRA's disclosure requirements stating, "Congress did not enact § 1681b(b)(2)(A)(i) to protect job applicants from disclosures that do not satisfy the requirement of that section; it did so to decrease the risk that a job applicant would unknowingly consent to allowing a prospective employer to procure a consumer report." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 888 (7th Cir. 2017). A plaintiff can demonstrate the harm – unknowing consent – by alleging confusion resulting from the defective disclosures. *Groshek*, 865 F.3d at 889. But without plausible allegations to undermine the consent, a plaintiff who otherwise "signed the disclosure and authorization form . . . cannot maintain that he suffered a concrete privacy injury." *Id.*

The Eighth Circuit has reached the same conclusion. *See, e.g., Schumacher*, 33 F.4th at 513-14 (concluding Schumacher's authorized SC Data to obtain her criminal background and thus, she "ha[d] failed to plead an intangible injury to her privacy."); *Auer v. TransUnion*, LLC, 902 F.3d 873, 877 (8th Cir. 2018) ("Because Auer consented to the City's background check, she failed to plead an intangible injury to her privacy that is sufficient to confer Article III standing.").

*Schumacher* explained that, when the plaintiff consents to the consumer report, to establish standing based on a privacy injury, she must also allege facts that would tend to undermine that consent. *Schumacher*, 33 F.4th at 512-13 (citing *Groshek*, 865 F.3d at 887-89). For example, the plaintiff may allege "facts indicating the additional information caused confusion as to the consent being given; that the employee would not have provided consent but for the extraneous information; or that the disclosure was so lacking in clarity that the employee was unaware that a

12

consumer report would be procured." *Schumacher,* 33 F.4th at 512-13; *see also Le v. Medtronic, Inc.,* No. 21-CV-1933, 2022 WL 1423308, at *2–3 (D. Minn. May 5, 2022) (conclusory allegation of confusion, without additional facts, insufficient to establish standing); *Kenn v. Eascare*, 483 F. Supp.3d 26, 36 (D. Mass. 2020) (plaintiff could not establish standing for invasion of privacy where she "signed the authorization and has not sufficiently alleged confusion, distraction, or misunderstanding of the form.").

Gray has not plead facts from which I could plausibly infer he was confused by the defective disclosures to such an extent as to invalidate the consent he gave to NAS. But Gray argues a violation of the stand-alone disclosure requirement in § 1681b(b)(2), by itself, is sufficient for the court to infer confusion. (Doc. No. 28 at 13) (citing *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017)).

In *Syed*, the plaintiff alleged that upon review of his personnel file, he "discovered that Defendant M-I had procured and/or caused to be procured a consumer report." *Syed*, 853 F.3d at 499. From this allegation the court inferred he was unaware of what he was signing at the time he authorized the credit check. *Id.* But there is no similar allegation of "discovery" in Gray's complaint to demonstrate he was unaware that NAS would obtain his consumer report. In fact, the allegations establish Gray consented to the procurement of the reports. (Doc. No. 22 at 7-8; *see also* Doc. Nos. 22-1 & 22-2). If Gray knew his reports would be obtained, an inference of confusion does not arise from the defective disclosures because the purpose of the disclosure, if not the formalities, was satisfied.

Because Gray consented to the procurement of these reports, without alleging facts that would tend to undermine that consent, he has not established a concrete injury for invasion of privacy. *See, e.g.*, *Le*, 2022 WL 1423308, at *2–3 (where plaintiff authorized procuring of consumer report, his "consent to an invasion of privacy preclude[d] establishing an injury for the purposes of standing."); *Long v. NUCO Educ. Corp.,* No. 5:19CV01711, 2020 WL 13469459, at *6 (N.D. Ohio

13

Apr. 20, 2020) ("Where a Plaintiff is in fact aware that a background report would be procured, she lacks a concrete invasion of privacy sufficient to confer standing."); *Baccay v. Heartland Payment Sys., LLC*, No. 17-7779, 2019 WL 337585, at *7 (D.N.J. Jan. 28, 2019) ("[T]here can be no invasion of privacy, . . . because . . . Plaintiff explicitly authorized the disclosure of her information.").

### 2. Adverse Action

Next, Gray argues he suffered tangible harm when NAS rescinded his offer of employment based upon the contents of the investigative consumer report. (Doc. No. 28 at 15). Gray relies upon *Ferguson v. DIRECTV, LLC*, to demonstrate that violations of § 1681b(b)(2) which result in the loss of employment can establish standing. No. 1:15-cv-2636, 2017 WL 733900, at *4 (N.D. Ohio Feb. 22, 2017).

Ferguson alleged DirecTV obtained a copy of his consumer report without providing the necessary disclosures or obtaining his consent as required by § 1681b(b)(2). DirecTV's review of that report resulted in his termination. The court found the loss of employment was a concrete injury sufficient to establish standing because DirecTV "unlawfully obtained Plaintiff's Congressionally-protected consumer information." *Id.* Thus, DirecTV committed more than a "mere procedural or technical violation of the FCRA; they impermissibly infringed on Plaintiff's privacy interest in his consumer report information." *Id.*

An important difference between *Ferguson* and this case is that NAS did not secretly obtain Gray's consumer report. Although Gray takes issue with the form and contents of the disclosures, Gray was on notice that these reports would be obtained and he authorized NAS to do so. (Doc. No. 22 at 7-8; *see also* Doc. Nos. 22-1 & 22-2). This factual difference undermines the applicability of the *Ferguson* court's standing analysis to this case. In *Ferguson*, a direct line could be drawn from DirecTV's statutory violation to the plaintiff's termination. *Id.* at *4 ("By taking an adverse action

14

allegedly based upon information in the consumer report *without first obtaining Plaintiff's permission* Defendants caused a concrete and particularized injury to Plaintiff.") (emphasis added).

But the statutory violation alleged is not the same as it was in *Ferguson*. NAS did obtain Gray's consent to obtain the report, albeit through the use of statutorily-defective disclosures. In this scenario, the concrete harm "flow[ed] from [the] statutory violation," *i.e.*, the defective disclosures, if those disclosures were so defective as render Gray's consent invalid. *Ward*, 9 F.4th at 363 (citing *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 862 (6th Cir. 2020)).

As discussed above, *Schumacher* outlined the types of allegations which would tend to show a plaintiff did not consent, or in other words, the allegations from which a court could infer concrete harm resulting from a defective disclosure. *Schumacher*, 33 F.4th at 512-13. Gray does not allege the defects in the disclosures caused confusion as to the consent being given; that he would not have provided consent but for the defects; or that the disclosures were so lacking in clarity that he was unaware that a consumer report would be procured. *Id.* (citing *Groshek*, 865 F.3d at 887). Because the allegations are insufficient to infer that the defective disclosures caused the harm alleged, Gray has pled nothing more than a "bare procedural violation, divorced from [the] concrete harm," which fails to establish an injury in fact. *Spokeo*, 578 U.S. at 341.

### 3. Emotional Distress

Gray next argues he has standing because he sought damages for emotional distress. (Doc. No. 28 at 20 citing Doc. No. 22 at 24 (requesting "[n]on-economic compensatory damages")). But Gray makes no allegations of emotional distress in his second amended complaint nor does he plead facts which permit me to infer he suffered any emotional distress. *See*, *e.g.*, *Modern Holdings, LLC v. Corning, Inc.,* No. 5:13-CV-405, 2019 WL 1877283, at *3 (E.D. Ky. Apr. 26, 2019) (granting motion to dismiss where allegation of emotional distress lacked "facts to support manifestation of that distress, or any physical or mental ailment for that matter."); *Daniel v. Goodyear Tire/CBSD*, No. 15-

15

cv-11479, 2017 WL 4276969, at *3-4 (E.D. Mich. Sept. 27, 2017) (conclusory allegations of frustration, embarrassment, or humiliation without corresponding factual allegations were insufficient to overcome motion to dismiss claim of negligent violation of FCRA).

Furthermore, to establish standing, any emotional distress would have to flow from the FCRA violations alleged. *See Ward*, 9 F.4th at 363. Gray made no argument tying his claims of the defective disclosures, with respect to errors in form or language, to any emotional distress. Instead, Gray attempts to tie his emotional distress claim to his loss of employment, but as explained above, Gray has not demonstrated a causal connection between the defective disclosures and this loss. Because Gray failed to allege emotional distress, or any of the factual underpinnings of the same, he has not properly pled a claim for this injury, let alone a concrete injury sufficient to establish standing.

I conclude Gray has not pled an injury in fact based upon any of the above identified harms sufficient to establish standing for his § 1681b(b)(2) or § 1681d violations. As Gray has failed to carry his burden, I dismiss Counts 1 and 2 to the extent they seek relief under § 1681b(b)(2) or § 1681d for lack of subject-matter jurisdiction.

## V. CONCLUSION

For the foregoing reasons, I grant NAS's partial motion to dismiss under Rule 12(b)(1) and dismiss the claims for relief under § 1681b and § 1681d at Counts 1 and 2 without prejudice for lack of subject matter jurisdiction. (Doc. No. 25); *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018). While I am dismissing Gray's FCRA claims for lack of concrete harm sufficient to establish standing, NAS should not take this ruling as approval of its conduct. On the face of the submissions, Gray appears to have identified deficiencies which may violate statutory requirements, and NAS would behoove itself to review its policies and procedures for proper compliance in this regard. Plaintiff's class action claims are also dismissed without prejudice because

the plaintiff lacks standing. *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) ("[I]ndividual standing is a prerequisite for all actions, including class actions."). Furthermore, NAS's partial motion for judgment on the pleadings under Rule 12(c) is denied without prejudice as moot. (Doc. No. 25).

The remaining claim for relief at Counts 1 and 2 under § 1681m, and the common law invasion of privacy claim at Count 3, were previously dismissed on March 31, 2022. (Doc. No. 15). Gray conceded in his motion for leave to file his second amended complaint that these claims were not revived but were included "to preserve the option to respectfully appeal their dismissal at the appropriate time." (Doc. No. 20 at 4). Accordingly, the only remaining active claims are those asserting individual race discrimination at Counts 4-6 of the second amended complaint.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge